908 F.2d 974
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WEST AMERICAN INSURANCE CO., Plaintiff-Appellee,
v.
John POTTS, et al., Defendants-Appellants.
 No. 89-6091.
 United States Court of Appeals, Sixth Circuit.
 July 25, 1990.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges; and PATRICK J. DUGGAN, District Judge.*
 PER CURIAM:
 
 
 1
 Defendants John[1] and Karen Potts (the "Pottses" collectively) appeal from the district court's July 20, 1989 order granting summary judgment in favor of West American Insurance Company ("West American"). At issue in this case is the type of coverage provided by the $1,000,000 multi-peril insurance policy that West American issued to Ferrell Benjamin. As genuine issues of material fact remain unresolved, we REVERSE.
 
 I.
 
 2
 On November 27, 1985, the Pottses were involved in an automobile collision with Ramiro Murillo Inturralde ("Inturralde") in Little Rock, Arkansas. Inturralde was driving a tractor-trailer truck and towing two additional tractor-trailer trucks when his brakes malfunctioned. As a result of the collision, Brandon Potts was killed; Jeffrey, Kimberly and Karen Potts were injured.
 
 
 3
 Inturralde purchased the trucks from Ferrell and Joe Benjamin[2] (the "Benjamins" collectively) in Memphis, Tennessee. Inturralde was transporting the trucks to Mexico when the accident occurred.
 
 
 4
 In a prior federal court action brought in Little Rock, Arkansas, the Pottses sued Inturralde[3] and the Benjamins, individually and as Fleet Service, alleging that the Benjamins were negligent in decking the three trucks. The Pottses argued that the Benjamins: severed the air hose from the brakes in the lead truck; failed to connect the air hoses between the lead truck and the towed trucks; and failed to inspect the trucks after their sale. The jury returned a verdict for the Pottses, awarding $1,165,000 in compensatory damages and $400,000 in punitive damages against the Benjamins. Potts v. Inturralde, No. LR-C-85-843 (E.D.Ark. May 5, 1988), aff'd sub nom. Potts v. Benjamin, 882 F.2d 1320 (8th Cir.1989).
 
 
 5
 On July 22, 1988, West American, Ferrell Benjamin's insurer, filed a complaint for declaratory judgment in the Tennessee Circuit Court for the Thirtieth Judicial District in Memphis. On July 26, 1988, the Pottses removed the case to federal court and subsequently moved for a change of venue to Little Rock, Arkansas. The district court denied the motion on October 26, 1988. The Pottses filed a motion for summary judgment on March 14, 1989. In its April 24, 1989 response to the motion for summary judgment, West American requested that summary judgment be granted in its favor and addressed, among other matters, the issue of the insurance policy's construction. On May 22, 1989, the Pottses filed a motion to reopen discovery and interrogatories, as well as a motion for in-court examination of Ferrell Benjamin regarding his intended insurance coverage and his understanding of his rights under the policy. The motion was referred to a magistrate who denied the motion on May 31, 1989, finding that the Pottses' failed to comply with Local Rule 8(a) of the Rules of the United States District Court for the Western District of Tennessee. Rule 8(a) requires a motion to be accompanied by a memorandum of law and fact.[4] On July 20, 1989, the district court granted summary judgment in favor of West American and denied the Pottses' pending motions. The Pottses filed a timely notice of appeal on August 16, 1989.
 
 II.
 
 6
 On appeal, the Pottses argue that the district court erred in: (1) denying their motion for a change of venue; (2) denying their motion to reopen discovery when the trial date had been continued from April 1989 to November 29, 1989; and (3) granting summary judgment in favor of West American.[5] We will address each claim separately.
 
 A.
 
 7
 We find that the district court properly denied the motion for a change in venue, pursuant to 28 U.S.C. Sec. 1404(a). In determining whether to grant such motion, the district court properly considered a variety of factors, including the convenience of the witnesses, where the operative facts occurred, the location of the documentary evidence, and the possibility of prejudice in either the forum or the transfer state. See Priess v. Fisherfolk, 535 F.Supp. 1271, 1279 (S.D.Ohio 1982). Foremost consideration must be given to the plaintiff's choice of forum. A motion for change of venue is properly granted when the balance weighs "strongly in favor of transfer." Nicol v. Koscinski, 188 F.2d 537 (6th Cir.1951); accord Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3rd Cir.1970), cert. denied, 401 U.S. 910 (1971). Determination of the greater inconvenience resides within the sound discretion of the district judge. His decision should not be set aside unless there is clear evidence of an abuse of discretion. Nicol, 188 F.2d at 538. The facts in this case do not support a finding that the district court abused its discretion in denying the motion for change of venue.
 
 
 8
 The district court relied on the fact that the insurance policy was issued in Tennessee. The interpretation of the contract, consequently, is governed by Tennessee law. See Beautytuft, Inc. v. Factory Insurance Association, 431 F.2d 1122 (6th Cir.1970). Although the Pottses are from Arkansas and the tort litigation occurred in Arkansas, the parties privy to the insurance contract and their business are located in Tennessee. By attaching trial transcripts from the underlying tort action to the motion for summary judgment, the necessity, expense and inconvenience of producing many of the witnesses in the present action have been alleviated. We, therefore, agree with the district court's denial of the motion for a change of venue.
 
 B.
 
 9
 Federal Rule of Civil Procedure 16 affords a trial judge broad discretion to curtail discovery. See Book v. Nordrill, Inc., 826 F.2d 1457, 1460 (5th Cir.1987). "In the absence of some showing why an extension is warranted, the scheduling order shall control." 6A C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1522.1 (2d ed. 1990). The trial judge's scheduling order should not be disturbed by this court unless he has abused his discretion. Book, 826 F.2d at 1461.
 
 
 10
 The Pottses argue that there was "no good reason" for the district court's refusal to reopen discovery. They failed, however, to sustain their burden of making a good cause showing of why the extension of discovery was justified. The Pottses' unsupported statement that further factual discovery was necessary provided an insufficient basis for granting an extension of discovery. See Truehart v. Blandon, 684 F.Supp. 1368, 1372 (E.D.La.1988), rev'd on other grounds, 884 F.2d 223 (5th Cir.1989). Therefore, we conclude that the denial of the Pottses' motion to reopen discovery was not an abuse of discretion.
 
 C.
 
 11
 We are required to conduct a de novo review of the district court's grant of summary judgment in favor of West American. See Burkart v. Post-Browning, Inc., 859 F.2d 1245, 1249 (6th Cir.1988). We will construe disputed facts in favor of the Pottses, the nonmoving parties.[6] Bishop v. Wood, 426 U.S. 341, 347 (1976). Summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 12
 After careful review of the briefs and the record, we conclude that the district court's grant of summary judgment was erroneous because genuine issues of material fact remain. Although a copy of the multi-peril insurance policy is included in the record, the ambiguous language of the policy and its endorsements prevent this Court from determining whether the policy at issue covers damages incurred as a result of the Benjamins' failure to properly deck the trucks. West American argues that the multi-peril policy insures Ferrell Benjamin against liability incurred as the lessor of the premises occupied by Fleet Service. West American also maintains that the policy includes an owner/landlord/tenant liability endorsement which merely protects against liability arising from the condition or use of the building. West American further contends that unlike general liability coverage, the coverage provided by the special multi-peril policy with an owner/landlord/tenant liability endorsement does not extend to liability arising from the nature of the enterprise or activities conducted within the insured premises.
 
 
 13
 The Pottses' interpretation of the coverage provided by the insurance policy differs substantially from West American's explanation. As evidence of the genuine issues of material fact that remain, the Pottses point to the ambiguous language of the policy and the inconclusive testimony of West American's insurance agent, Sam Watson, regarding Ferrell Benjamin's intentions when he purchased the policy. They further contend that the policy's completed operations exclusion[7] is inapplicable to the present case; therefore, the exclusion does not bar recovery under the policy.[8] We find the Pottses' contentions persuasive. Therefore, we conclude that the ambiguous language of the policy and the questions regarding Ferrell Benjamin's intentions bar summary judgment. The existence of genuine issues of material fact renders the district court's grant of summary judgment erroneous.
 
 III.
 
 14
 For the foregoing reasons, we REVERSE the grant of summary judgment in favor of West American and REMAND this case to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Patrick J. Duggan, U.S. District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 John Potts appeals this action individually; as administrator of the estate of Brandon Potts, his deceased son; and as father and natural guardian of Jeffrey Potts and Kimberly Potts
 
 
 [2]
 Joe and Ferrell Benjamin were doing business as Fleet Service, Inc
 
 
 [3]
 Inturralde, a citizen of Mexico, did not appear at the trial. His whereabouts are unknown
 
 
 [4]
 The Pottses filed a second motion to reopen discovery on July 21, 1989, one day after the district court granted summary judgment and ruled that certain nondispository motions were moot. As the district court did not rule on this motion, it is not properly before us on appeal
 
 
 [5]
 The Pottses also claim that the district court should have granted a default judgment on their counterclaim because West American failed to file an answer within 29 days. Because the Pottses' failed to properly move for an amended counterclaim by seeking leave of court, their counterclaim was not properly filed. Thus, we find the Pottses argument for a default judgment frivolous
 
 
 [6]
 The district court granted West American's cross-motion for summary judgment
 
 
 [7]
 The policy defines the terms of the completed operations exclusion as:
 "completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
 (1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
 (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
 (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
 Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete shall be deemed completed.
 The completed operations hazard does not include bodily injury or property damage arising out of
 (a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or a vehicle created by the loading or unloading thereof ...
 Joint Appendix at 75.
 Arguably, the decking was so poor that it does not constitute a completed operation. Therefore, the exclusion does not apply. This argument furnishes another genuine issue of material fact that renders the grant of summary judgment inappropriate.
 
 
 [8]
 Curiously, West American failed to address the completed operations exclusion argument on appeal